**UNITED STATES of America**

v.

**The USAF COASTAL CRUSADER, her engines, tackle, appurtenances, etc., and Burton A. Rogers, Jr., Thomas S. Kline, Kenneth E. Sterner, Demetrios M. Kyriakos, Roque Asencio, Harry G. Jones, Harry White, William E. Morris, Wayne M. Heimiller, Leroy F. Elford, Edward D. Kolar, Rex L. Henderson, Marvin P. Phillips, Cleo Copeland, Charles Wedincamp, Melvin J. Gallier, Clifford E. Taggart, Sr., Clayton H. Bruce, James J. O'Hara, Julian S. Mineses, Joseph A. Macedonia, Bayard E. Heimer, Wallace W. Silcox, Jesse A. Morris, James L. Baker, Repert H. Kight, Jerry H. Swearingen and Rexford Dickey.**

Adm. No. 4432.

United States District Court
D. Maryland.

Nov. 2, 1962.

Joseph D. Tydings, U. S. Atty., Baltimore, Md., and William E. Gwatkin, III, Atty., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., for libelant.

Richard P. Long, New York City, and Solomon Kaplan, Baltimore, Md., for respondents.

THOMSEN, Chief Judge.

This possessory libel was filed on October 29, 1962, by the United States as owner and operator of the United States Air Force Vessel Coastal Crusader, her engines, tackle, appurtenances, etc., against the vessel, the unlicensed members of her crew and Rexford Dickey, their local port representative. The vessel is an undocumented public vessel of the United States, now lying at the port of Baltimore, Maryland, within the jurisdiction of this Court.

Since about 1957 the Air Force has contracted with Pan-American World Airways, Inc. (Pan Am) to furnish cer-

tain services in connection with the Atlantic Missile Range, including the operation for the Air Force of a number of public vessels, known as Ocean Range Vessels, one of which is the USAF Coastal Crusader.

Until July 1, 1962, Pan Am had subcontracted the operation of these vessels for the Air Force to Suwannee Steamship Company (Suwannee), of Jacksonville, Florida. Pursuant to that subcontract Suwannee manned, victualled, supplied and navigated the USAF Coastal Crusader as a public vessel of the United States for and on behalf of the Air Force on national defense missions in support of the national defense effort of the United States.

The contracts between the Air Force and Pan Am contained the following or similar provisions:

"25. GOVERNMENT PROPERTY. * * *

"(b) Title to all property furnished by the Government shall remain in the Government. * * * All Government-furnished property, together with all property acquired by the Contractor title to which vests in the Government under this paragraph, are subject to the provisions of this clause and are hereinafter collectively referred to as 'Government Property'.

* * * * * *

"(h) The Government Property shall remain in the possession of the Contractor for such period of time as is required for the performance of this contract unless the Contracting Officer determines that the interests of the Government require removal of such property. In such case the Contractor shall promptly take such action as the Contracting Officer may direct with respect to the removal and shipping of Government Property. In any such instance, the contract may be amended to accomplish an equitable adjustment in the terms and provisions thereof. * * *"

The subcontracts between Pan Am and Suwannee contained similar provisions.

On June 30, 1962, the subcontract under which Suwannee operated the USAF Coastal Crusader for and on behalf of the Air Force as aforesaid expired and was not renewed, but was extended for a brief period. The services of Suwannee with respect to the USAF Coastal Crusader came to an end when she arrived at the port of Baltimore on October 27. Those services are to be performed hereafter by Marine Transport Lines, Inc. (Marine), the new subcontractor.

The individual respondents (other than Dickey) were, for various periods of time prior to October 27, members of the crew of the USAF Coastal Crusader, having been employed by Suwannee for a voyage thereon which terminated at Baltimore, Maryland, on October 27. They are all members of the Seafarers International Union (SIU). The employees of Marine are members of and represented by the National Maritime Union (NMU). In August 1962 the SIU filed unfair labor practice charges with the National Labor Relations Board against Pan Am and Marine, raising various issues which are still under investigation and consideration by the General Counsel of the Board.

At about 1630 on October 27, the Master of the USAF Coastal Crusader, in the presence of a Deputy Shipping Commissioner, tendered to the members of the crew the full amount of their wages due and owing and their discharge. The licensed personnel accepted their wages and were discharged and released from further service on the vessel; but the unlicensed members of the crew, through respondent Dickey, the local port representative for the unlicensed crew, refused to accept their wages and discharge.

Since similar action had been taken by the crews of several other Ocean Range Vessels, the Deputy Chief of Staff of the Air Force Systems Command for Procurement and Materiel had sent his deputy, Col. James B. Hilton to Balti-

more that afternoon. Upon learning from the Master that the men had refused to accept their discharge and wages, Col. Hilton communicated by telephone with the USAF Administrative Contracting Officer for the Pan Am contract and also talked to representatives of Pan Am and Suwannee. At about 1715 Col. Hilton was advised by the Administrative Contracting Officer that, pursuant to his request and direction, Pan Am had tendered and the USAF had accepted redelivery of the USAF Coastal Crusader and all equipment and supplies on board. The Air Force assumed full responsibility for the care and custody of the vessel from and after the date and hour of transfer, which was fixed at 1730 on that day, October 27.

At 1732, on board the vessel, the Master (Askenback) transferred command of the USAF Coastal Crusader to Col. Hilton, who assumed command of and full responsibility for the vessel on behalf of the USAF.

Askenback thereupon assembled the crew, and he and Col. Hilton told the men what had been done. Col. Hilton then "respectfully ordered" the men to leave the vessel.[1] After respondent Jones, the ship's delegate, had conferred by telephone with representatives of the Seafarers International Union, he replied on behalf of the men that they were not going to leave the ship. In the meantime one of the crew spoke and said that the crew had taken an interest in the ship and her mission, wanted to go back to sea on her and hated to be ordered off the ship. Col. Hilton responded that he appreciated the circumstances and their interest in the ship, which was reflected in her spic and span condition, and that he and the boys at Cape Canaveral appreciated their efforts on the range. The acts of the individual respondents in refusing to be paid off and to leave the vessel have been undertaken in an effort to preserve their jobs aboard the vessel, and have not been accompanied by any picketing or violence of any kind.

Since 1732 on October 27 the vessel has been under the command of Col. Hilton, with an Air Policeman at the gangway. No force has been used to prevent the men from going and coming, pendente lite, and the men have not vacated their quarters, but have done nothing else to interfere with the work which is being done on the vessel at the Maryland Dry Dock and Shipbuilding Co. That work is scheduled to be completed tonight, November 2, and the Air Force officer in charge of Range Operations testified that it is vital to those operations that the vessel leave Baltimore not later than Wednesday morning, November 7.

The individual respondents contend that the United States has been acting in this case on behalf of Pan Am. That contention is categorically denied by the Government. The testimony shows that on October 27 the United States caused the vessel to be redelivered to it by Pan Am and by the Master for the purpose of filing the libel in this case, and that when the respondents have been removed the United States will redeliver the vessel to Pan Am for continued operation under the contract for the Air Force. It is apparent that both the United States and Pan Am have legitimate interests in the subject matter. In view of the paramount interest of the United States, this Court finds it unnecessary to discuss the reasons for the action taken by the Government, especially since no evidence of bad faith has been produced.

The USAF Coastal Crusader is a public vessel of the United States engaged exclusively as an Ocean Range Vessel in connection with the military guided missile testing program and the space exploration projects of the United States.

---

1. The order was so polite that some of the men questioned whether it was a command. The Colonel evidently agreed with Sir Joseph Porter, K.C.B.—

"For I hold that on the seas
The expression, 'if you please,'
A particularly gentlemanly tone implants."
—H.M.S. Pinafore, Act 1—

The Government has at all times had ultimate control of the vessel.

Under the circumstances shown by the evidence, the Government is clearly entitled to her immediate, sole and exclusive possession and to a decree requiring the individual respondents to leave the vessel and to deliver and restore the use and possession thereof to the United States. Korthinos v. Niarchos, 4 Cir., 175 F.2d 730, 732.

The Court commends counsel for both sides for their cooperation in preparing and presenting this case so that it could be heard on the merits and decided on the fourth day after the libel was filed.

### DECREE

This cause having come on to be heard, and it having been shown to the satisfaction of the Court and the Court finding that libelant United States of America is the owner and operator of the United States Air Force Vessel Coastal Crusader, a public vessel of the United States, and is entitled to her immediate, sole and exclusive possession, and that the individual respondents named in the caption above have heretofore refused to quit said public vessel, or to deliver and restore use and possession thereof to libelant United States of America, although having been ordered off the said public vessel by the officer of the United States Air Force in command of the said USAF Coastal Crusader, it is therefore

ORDERED AND DECREED that the individual respondents named in the caption above, and each of them, leave the United States Air Force Vessel Coastal Crusader and deliver possession thereof to libelant United States of America, and in all respects refrain from interfering with the use and possession by the United States of said public vessel by midnight, twelve o'clock p. m., Friday, November 2nd, 1962, and it is further

ORDERED that the United States Marshal use all means which he in his discretion shall deem necessary to carry out this Order and report to this Court immediately thereafter that this Order has been carried out.

The Court specifically states that it is the purpose and intention of the Court that this Decree shall not affect or interfere with any rights which the individual respondents (except the respondent Dickey) may have for appropriate relief in the proceedings heretofore instituted by them or in their behalf before the National Labor Relations Board or in any other forum.